

Steven Fishman
56971 Panchita Road
Yucca Valley, California 92284-2233



FILED

SEP 2 4 2020

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **CASE NO. 07-CR-0195-004-CVE** |
| | ) | |
| Plaintiff, | ) | **RENEWED MOTION FOR** |
| v. | ) | **COMPASSIONATE RELEASE** |
| | ) | **PURSUANT TO 18 U.S.C. §3582** |
| STEVEN FISHMAN, | ) | **(c)(1)(A), PETITIONING THE COURT** |
| | ) | **TO CHANGE HOME CONFINEMENT** |
| Defendant. | ) | **STATUS TO REDUCTION IN** |
| | ) | **SENTENCE; DECLARATION OF** |
| | | **STEVEN FISHMAN** |

COMES NOW the Defendant, STEVEN FISHMAN, in Pro Se and without the benefit of

Counsel and files his "Renewed Motion for Compassionate Release Pursuant to 18

U.S.C. §3582(c)(1)(A), Petitioning the Court to Change 'Home Confinement Status' to

Reduction in Sentence, as stated hereinbelow:

## I.     INTRODUCTION:

✓ Mail    ___ No Cert Svc    ___ No Orig Sign

___ C/J    ___ C/MJ    ✓ C/Ret'd    ___ No Env

___ No Cpys    ___ No Env/Cpys    ___ O/J    ___ O/MJ

On April 3, 2020, Defendant Fishman submitted a Motion for Compassionate Release with the Court, which was filed on April 9, 2020.  On April 14, 2020, in Document 625, the Court dismissed the Defendant's Motion Without Prejudice "for lack of jurisdiction due to defendant's failure to exhaust remedies (failure to fully exhaust all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf; the lapse of 30 days from the receipt of such a request by the Warden, whichever is earlier).  Defendant attached a request submitted to the Warden dated March 23, 2020, seeking placement in Home Confinement pursuant to 18 U.S.C. §3621, not a request for Compassionate Release under 18 U.S.C. §3582(c).  The Court is aware that defendant did properly request Compassionate Release through the Warden pursuant to §3582(c) on April 17, 2019.  He was denied pursuant to BOP Policy Statement 5050.50 on May 6, 2019, due to being ineligible for not having served 50% of his sentence.  Defendant was directed that he could reapply as an "elderly inmate with medical conditions," when eligible, which would be September 22, 2020."

## II.    DEFENDANT'S COMPLIANCE WITH THE COURT'S ORDER TO EXHAUST ADMINISTRATIVE REMEDIES:

### A.    REMEDY ID 1016123-F1 FOR HOME CONFINEMENT:

The Court is correct when it stated that two different Administrative Remedies were submitted to the Warden(s) at FPC Lompoc.

The first Administrative Remedy was **Remedy ID Number 1016123-F1**, which was first submitted as an **Informal Resolution Request for Home Confinement** pursuant to

§3621 on March 23, 2020, which was the same date the Court referenced in its Order. On April 7, 2020, the Defendant's request was denied by the Defendant's Unit Manager, Ms. Y. Carlon, explaining that the Defendant did not qualify for Home Confinement at that time because he had only served 47.9% of his sentence, [which was similarly reflected in the Court's April 14, 2020 Order]. [See: Exhibit 1].

On the same day, April 7, 2020, the Defendant filed a [Formal] Request for Administrative Remedy, or ["BP-9"], to Acting Warden James Engleman, making an argument that some federal inmates had been granted Home Confinement by the BOP having only served 25%. The Warden's Office received the Defendant's filing on April 27, 2020.

[See: Exhibit 2].

On April 28, 2020, Acting Warden James Engleman was replaced by Acting Warden [Ms.] B. Von Blanckensee.

Acting Warden [Ms.] B. Von Blanckensee denied my Administrative Remedy for Home Confinement, **Remedy ID Number 1016123-F1** on April 30, 2020, stating the following:

> "Our investigation reveals that when you were initially reviewed for home confinement under the CARES Act, there was guidance that limited consideration to inmates who served at least 50% of their sentence. As of the date of this response, FCC Lompoc has received additional guidance that prioritized inmates who served at least 50% of their sentence for consideration for home confinement. As a result, you will be considered

for home confinement in accordance with the current criteria, in the priority currently provided…"

[See: Exhibit 3].

Then four days later, Acting Warden [Ms.] B. Von Blanckensee provided additional valuable guidance in what she titled a "Compassionate Release Review," wherein she stated that the Defendant could apply for Compassionate Release under the "other elderly inmate" provisions of 18 U.S.C. §3582(c)(1)(A).

[See: Exhibit 4].

The Defendant was released to Home Confinement on August 28, 2020 by [Current] Warden Patricia V. Bradley, and is living with his daughter and son-in-law at their home in Yucca Valley, California.   In essence, **Remedy ID Number 1016123-F1** which was originally denied, was later Granted by the presiding Warden due to the fact that the Defendant was less than one month away from his 50% service of sentence threshold.

## B.    REMEDY ID NO. 1021751-F1 FOR COMPASSIONATE RELEASE:

Back on April 21, 2020, the Defendant's Case Manager, Ms. Sandra Rhodes, at the instructions of Acting Warden James Engleman, put up a bulletin in Defendant Fishman's Housing Unit, entitled "Talking Points for Inmates Asking About Early Releases During COVID-19 as of 4/20/2020." The Bulletin stated:

"The process for Compassionate Release, otherwise known as a Reduction in Sentence (RIS), has not changed for the Bureau of Prisons (BOP). An inmate may submit a request to the Warden for consideration. Inmates will be provided a response. An inmate may initiate a request for consideration only when there are particularly "extraordinary or compelling" circumstances which could not reasonably have been foreseen by the court at the time of sentencing. The BOP has defined "extraordinary or compelling" as the following:

... Other Elderly Inmates (65+ and 10 years, **or** 75% of term." (emphasis added).

[See: Exhibit 5].

One day later, on April 22, 2020, the Defendant submitted an Informal Resolution to apply for Compassionate Release based on the Warden's Memo, and explained to his Unit Manager, Ms. Y. Carlon, that he qualifies for Compassionate Release, both under "elderly inmate with medical conditions," and "other elderly inmate," [the latter of which was referenced by Former Warden Ms. B. Von Blanckensee in her denial of the Defendant's Request for Home Confinement dated May 4, 2020. Unit Manager Carlon responded to the Defendant's Request for an Informal Resolution of **Remedy ID No. 1021751-F1**, by stating:

"Per Program Statement 5050.50, you may submit a request to the Warden for consideration. This is for informational purposes only, as this is not completed by Unit Team Staff,"

[See: Exhibit 6].

After receiving guidance from his Unit Team [Exhibit 6], on the next day, the Defendant sent a Request in the form of an to Acting Warden Engleman for consideration for

Compassionate Release based on the "extraordinary and compelling circumstances" which were described in Warden Engleman's April 20, 2020 Memo, [Exhibit 5]. The Defendant explained that he believed that he was qualified under the "other elderly inmates" provision within 18 U.S.C. §3582(c)(1)(A), since he was 70 years old and had served 10½ years; as well as being qualified under the "elderly inmate with medical conditions" provision, since he had qualifying medical conditions under the CDC Guidelines, referencing Warden Engleman's April 20, 2020 Memo once again, [Exhibit 5]. The Formal Request for Administrative Remedy to Warden Engleman was submitted on April 23, 2020, and received by the Warden's Office on April 24, 2020. Warden Engleman construed the Defendant's "Inmate Request to Staff" as a Formal Request for Administrative Remedy, or substitute BP-9 under **Remedy ID Number 1021751-F1**.

[See: Exhibit 7].

On May 1, 2020, Acting Warden James Engleman was replaced by Acting Warden [Ms.] B. Von Blanckensee.

The Defendant then filed a **Formal Request for Administrative Remedy ["BP-9"]** for Compassionate Release to the Warden on May 7, 2020, based on:

- Elderly Inmate With Medical Conditions [pursuant to the Court's Order]; and:
- Other Elderly Inmates [having served 10+ years and over age 65] [as the Defendant is 70 years old and has served 10.75 years].

The Defendant's BP-9 was received by the Warden's Office on May 23, 2020.


[See: Exhibit 8].


The Administrative Remedy Coordinator sent the Defendant a Receipt for **Remedy ID No. 1021751-F1** on May 24, 2020, indicating that the Warden would respond to the Defendant's Reduction by June 12, 2020.


[See: Exhibit 9].


Acting Warden [Ms.] B. Von Blanckensee was then replaced by Acting Warden Louis J. Milusnic on June 1, 2020.


On June 4, 2020, [Former] Warden Louis J. Milusnic responded to the Defendant's BP-9.  Due to the fact that the Defendant began with an Informal Resolution to his Unit Team [Exhibit 6], and that the Defendant appealed the denial of his Informal Resolution using an Inmate Request to Staff to Former Warden Engleman [Exhibit 7], followed by a Formal Request for Administrative Remedy [Exhibit 8] to Former Warden [Ms.] Von Blanckensee, Warden Milusnic considered the BP-9 [Exhibit 8] to be an appeal rather than an original Request for Compassionate Release.  Within the Warden's Response, he clearly stated the following:

"In your appeal, you assert your asthma, COPD, emphysema, diabetes, high

cholesterol, and high triglycerides meet the "extraordinary and compelling reasons to support a compassionate release determination by the Director. Accordingly, **we will reconsider your appeal and you will receive a separate memorandum with my decision."** (emphasis added).

[See: Exhibit 10].

On or about July 1, 2020, the Defendant inquired in person with his Case Manager, Ms. Sandra Rhodes, as to why he did not receive a "separate memorandum from the Warden with his decision" on granting the Defendant Compassionate Release. Case Manager Rhodes advised the Defendant: "Please be patient, we have had four Acting Wardens since you arrived at Lompoc Camp, and now we are getting a permanent Complex Warden very soon. She will issue your Memorandum Decision when she gets here, if Warden Milusnic doesn't provide it to you before he leaves the facility."

On August 1, 2020, Former Acting Warden Louis J. Milusnic was replaced by Federal Correctional Complex Warden [Ms.] Patricia V. Bradley.

In spite of the fact that the "defendant's administrative rights to appeal a failure to bring a motion on the defendant's behalf; [or] the lapse of 30 days from the receipt of such a request by the Warden, whichever is earlier"[1], had been fulfilled on June 23, 2020 [thirty days after the Defendant's Formal Request was received by the Warden's Office on May 23, 2020], the Defendant zealously and vigorously sought to compel with this Court's Order by obtaining the Warden's "Separate Memorandum Decision" on his

---

[1] As stated in the Court's April 14, 2020 Order, Document 625, Page 2

appeal for Compassionate Release, with either the Granting of the Request or the reasons for a Denial. In doing so, the Defendant believed that there would be no question that he was complying with the Court's Order.

Therefore, on August 4, 2020, the Defendant sent an Inmate Request to the new Warden, Ms. Patricia V. Bradley, explaining that Warden Milusnic's "Separate Memorandum Decision" which was promised on June 4, 2020 had not arrived, and it was sixty days since that time; and further explaining that although the Defendant had just been approved for Home Confinement, he sought to convert his Home Confinement to a Reduction in Sentence/Compassionate Release, and he felt he could not do so until he was able to submit the "Separate Memorandum Decision" to the Court, either granting or denying his request.

[See: Exhibit 11].

### C.    ANATOMY OF CONFUSING TWO SEPARATE ADMINISTRATIVE REMEDY REQUESTS:

**REMEDY 1016123-F1 FOR HOME CONFINEMENT**
**REMEDY 1021751-F1 FOR REDUCTION IN SENTENCE**

On August 25, 2020, I wrote once again to Warden Bradley through my Unit Manager, Ms. Y. Carlon, reminding her that I had been waiting 81 days for Former Warden Milusnic's "Separate Memorandum Decision" on his review of my appeal to him for Compassionate Release/Reduction in Sentence.

Unit Manager Carlon answered the Inmate Request to Staff addressed to the Warden through her office, stating that my Reduction In Sentence/Compassionate Release Request **[Remedy ID No. 1021751]** that I submitted on April 24, 2020 was answered on May 4, 2020.  However, the answer I received on May 4, 2020 was in regard to my Request for Home Confinement **[Remedy ID No. 1016123-F1].**

[See: Exhibit 12].

Then came the epiphany.   The Defendant's Formal Request for Reduction-In-Sentence/Compassionate Release in **Remedy ID No. 1021751** was submitted on May 7, 2020, and filed with the Warden's Office on May 23, 2020.  [Once again, please see Exhibit 8].  Therefore, it would have been physically impossible for the Warden to deny the Defendant's Request for Reduction-In-Sentence/Compassionate Release on May 4, 2020, nineteen days before it was ever received by the Warden's Office on May 23rd, 2020!

When the Defendant discovered the time-line error and that the Warden and Unit Team were confusing two separate administrative remedy requests, the Defendant then sought to explain the confusion to his Unit Team and to the Warden by sending both an electronic request through the Inmate Electronic Request To Staff System, [See: Exhibit 13], and a hard copy to his Unit Team [See: Exhibit 14].

There is zero doubt that the Defendant made every diligent effort to thoroughly and completely exhaust his administrative remedies, even though up until the date of his release from the Federal Prison Camp at Lompoc, he was unable to obtain the "Separate Memorandum Decision" of the Warden, either granting or denying his Request for Reduction-In-Sentence/Compassionate Release.

On September 2, 2020, the Defendant contacted Mr. Juan Herrera by telephone at (310) 732-5178, the Residential Release Manager ["RRM"] for the Central District of California at Long Beach, inquiring as to whether he could assist the Defendant in obtaining the final decision from Warden Bradley of Lompoc. RRM Herrera said he would contact Warden Bradley and look into it. Mr. Herrera added that since the Defendant is on Home Confinement, he can consider the matter exhausted for purposes of filing the instant Motion to Convert Home Confinement to a Reduction-In-Sentence with the Court.

III.    **THE DEFENDANT HAS SERVED 50% OF HIS SENTENCE.**

On September 22, 2020, Defendant Fishman reached the threshold of serving 50% of his sentence. He waited until reaching this date before applying for a Reduction-In-Sentence, as the Court Ordered.

IV.    **ADDITIONAL REASONS SUPPORTING GRANTING OF COMPASSIONATE RELEASE TO THE DEFENDANT:**

### A.    CONTRIBUTION TO LAW ENFORCEMENT BY REPORTING A NATIONWIDE ILLEGAL PRISON E-MAIL SCHEME:

During the time the Defendant was serving his sentence at FCI Terminal Island, he discovered that inmates were able to bypass the Corrlinks Prison Mail System by setting up accounts with a domain called "emailinterface.org," which was a subscription service charging inmates a setup fee of $25.00 per month, and then a monthly charge of $15.00 per month.  This illicit service permits inmates to receive and send emails to recipients not on their approved mailing list through the Corrlinks System.  Using an emailinterface.org account, inmates routinely send text messages to unauthorized recipients by simply entering cell phone numbers into the subject lines of the email, and then typing the body of their text messages below.  While BOP policy forbids the use of cell phones, this service turns every Corrlinks account into a text-messaging cell phone! Inmates are also able to send unauthorized emails to an unlimited number of unverified recipients by placing unauthorized email addresses into the subject line and then typing messages in the body of the e-mail.  Furthermore, by typing either "ggl" or "miss you g" into the subject line, inmates had Internet access to the Internet through Google through this scam service.

The Defendant rapidly discovered was that other inmates at FCI Terminal Island were using this illicit system to deal and transport drugs from Mexico, Colombia and other countries, to conduct illegal gambling pools, and to sponsor terrorism, using codes.  The Defendant reported this crime to Special Investigation Services ["S.I.S."] Officer Freddy Caban, who in turn reported the matter to the Captain, to Warden Felicia Ponce, and

ultimately to the F.B.I.   S.I.S. Officer Caban gave the Defendant a special phone number to contact him directly regarding this matter and any other criminal activity he observed at FCI Terminal Island.   Officer Caban instructed the Defendant to call him anytime at (310) 832-9439, and identify himself under the code name "T.I. Lawyer," [ostensibly, because the Defendant was the FCI Terminal Island Education Law Clerk for ten years while in that facility].   The Defendant made Officer Caban aware of Chad Johnson of Holt, Michigan: the criminal running the scam bypassing the Corrlinks System, which was revealed to be a national problem, not just local to FCI Terminal Island, as inmates were able to communicate with each other from prison to prison, exposing informants [rats] and child molesters to "shot callers" and gang members, placing the lives of thousands of inmates in grave danger.   The "Subtext" [emailinterface.org] service provides a "back door" for prison violence, drug smuggling, and criminal organizations generally.   Astonishingly, as of the date of the filing of this Motion, it still is fully operational, in spite of every attempt made by the Defendant to report it to the Department of Justice!

18 U.S.C. §4 states:

> "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the **United States**, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the **United States**, shall be fined under this title or imprisoned not more than three years, or both."

While housed at FPC Lompoc, over a dozen inmates used the Subtext [emailinterface.org] service to conduct businesses, both legal and illegal,  thereby violating BOP Policy.

Once on Home Confinement, the Defendant was able to print out the web site for the criminal running this illegitimate enterprise.   As stated above, his name is Chad Johnson, with an address of Post Office Box 698, Holt, Michigan 48842.  His telephone number is (760) 421-9913, and his e-mail address is kimadmin@emailinterface.org. [See: Exhibit 15, consisting of the current, operational website of this scammer, as well as the source code behind the website which the Defendant extrapolated from the site, illegally using trademarks of the BOP, Trulincs, and Corrlinks, in order to create the false impression that this criminal activity is somehow sanctioned by the Bureau of Prisons and the United States Department of Justice.  Quite the contrary.

While at FCI Terminal Island, the Defendant was told by another inmate, Robert Lee Holloway, Federal Register Number 29851-298, who was/is a customer of "Subtext," that he had personally spoken to Chad Johnson.  [See Declaration of Steven Fishman, attached].  Inmate Holloway told the Defendant that Chad Johnson claims to have 5,000 subscribers, consisting of inmates with accounts paid for by family members or "business associates."   At $15.00 per month per subscriber [if Mr. Johnson's claim is accurate], his revenue stream from this felonious activity is $75,000 per month.  Inmate Holloway told the Defendant that Chad Johnson mentioned to him that he was also a former federal inmate, and that is why he was able to circumvent the Corrlinks system.

[See: Declaration, Id.].    The Defendant submits Exhibit 15 proving evidence of an ongoing crime against the Bureau of Prisons and the Department of Justice, for disposition to the appropriate investigatory agencies as the Court sees fit.

The Defendant neither asked for nor received any special treatment for his assistance. Since this is an ongoing crime affecting the security and operation of the Bureau of Prisons, the Defendant is bound under the terms and conditions of his October 23, 2009 Judgment & Commitment Order with this Court, and under 18 U.S.C. §4 to bring this criminal activity to the Court's attention, and asks the Court to take notice of the Defendant's cooperation.

### B.    THE DEFENDANT TESTED POSITIVE FOR COVID-19 ON JUNE 26, 2020, WHILE SERVING HIS SENTENCE AT FPC LOMPOC NORTH CAMP:

While asymptomatic, the Defendant contracted COVID-19 on June 26, 2020, while confined at FPC Lompoc North Camp.[2]  The events leading up to his contagion are well-documented in United States Attorney General Michael Horowitz's Pandemic Response Report Number 20-086 regarding the Federal Correctional Complex at Lompoc, which at one time had the highest number of COVID-19 cases in the country. Inmates who tested positive and were placed into a Quarantine Unit at the United States Penitentiary were often returned to their housing units without ever being re-tested, thereby spreading the Coronavirus to inmates and staff alike.    Two such inmates, Michael Wayne Ellis, Federal Register Number 94083-012, and Brian Higuera,

---

[2] See: Exhibit 16, Medical Records of the Defendant testing positive for COVID-19.

Federal Register Number 65169-112, were both returned to the Defendant's Housing Unit at FPC Lompoc North without ever being re-tested on or about April 30, 2020. Each of the men sought the assistance of the Defendant, who was the only Inmate Law Clerk at Lompoc North Camp, since they wanted to obtain their medical records and other relief under the administrative remedy program.  Even though they and the Defendant were all wearing masks and taking precautions, the Defendant believes that he caught COVID-19 from them, since the Law Library at Lompoc North Camp is only an 800-foot small room with no ventilation.    Notwithstanding the manner by which the Defendant contracted COVID-19 at FPC Lompoc, he was placed in Quarantine in the United States Penitentiary's "H Unit," where many other inmates were sick with COVID-19.[3]

The Defendant recovered and was subsequently tested three times, with all negative test results.  However, the potential for far more serious complications, even death, can occur if an individual contracts COVID-19 a second time.  To illustrate, please see the following link as an example:    https://newsinfo.inquirer.net/1326014/pgh-doctor-dies-after-contracting-covid-19-a-second-time,

As an inmate recovering from COVID-19 with specific medical conditions including diabetes, asthma, COPD, emphysema, high cholesterol, and high triglycerides, the Defendant would have a better chance of getting medical care of his choosing more quickly under Compassionate Release/Reduction-In-Sentence than under Home

---

[3] Exhibit 17:  See Article on Lompoc's COVID Quarantine Unit, H Unit, published in the Santa Barbara Independent Newspaper.

Confinement.  For instance, on September 9, 2020, the Defendant needed to see a doctor because he has lost most of his vision in his right eye due to the fact that while in prison at FPC Lompoc during the pandemic, there was no ophthalmologist available. His cataract in his right eye has become progressively worse since it was diagnosed in 2019 by Dr. Greg Kubal, Contract Provider of Ophthalmology at FCI Terminal Island. While under the supervision of the Residential Release Manager or RRM, he was given an appointment to see a Contract Physician in Riverside, California, 75 miles away from his release residence in Yucca Valley, California.  The Contract Physician has referred the Defendant to an ophthalmologist in Riverside, near the Halfway House at Rubidoux, California, which will require the Defendant to travel another 75 miles each way.  The Defendant is without a car, and must rely on his daughter or son-in-law, who are both working.  If the Defendant were granted the instant motion, he could find an ophthalmologist in Yucca Valley where he is living, and will not have to wait weeks or even months to address his medical conditions.[4]  If the Defendant were to relapse with COVID, his chances of getting expeditious medical care may mean the difference between further deterioration of his three lung conditions, his eye condition, and recovery.

Additionally, further guidance has been provided by United States Inspector General Michael Horowitz in his "Pandemic Response Report 20-086," published July 2020, entitled "Remote Inspection of Federal Correctional Complex Lompoc," in which he states [in relevant part] on Page 22:

---

[4] See Declaration of Steven Fishman, attached hereto.

Compassionate Release:  Another means by which inmates can be moved from prison to home is through a reduction in sentence pursuant to the compassionate release statute, 18 U.S.C. §3582(c)(1)(A)(i).  Under the statute, either the BOP or an inmate may request that a federal judge reduce the inmate's sentence for "extraordinary and compelling reasons," such as age, terminal illness, **other physical or medical conditions**, or family circumstances.  An inmate must first submit a compassionate release request to the BOP, but the inmate is permitted to file the motion directly with the court if the BOP denies the petition, or 30 days after the inmate files the petition with the BOP, whichever occurs first."

(emphasis added).

[See: Exhibit 18].

Previously, the BOP denied requests for Reduction-In-Sentence if the inmate did not have a terminal condition, or a debilitating medical condition, meaning that he could not care for himself.  What has changed in this guidance from the Inspector General is that as long as the inmate meets specific criteria of medical or physical conditions as set by the Center for Disease Control and Prevention ["CDC"] as qualifying, then barring any other concerns relating to elements such as crimes of violence, terrorism, or sex offenses, the eligibility under "other physical or medical conditions" is established.

The Defendant proffers to the Court that his medical conditions do qualify for Compassionate Release.   Diabetes, asthma, COPD, emphysema, and the cardiac conditions of high cholesterol and high triglycerides are all CDC-qualifying, particularly in a 70 year old man who has undergone hip replacement surgery and a pulmonary embolism while in prison during 2015.

## C.    A SENTENCING DISPARITY REMAINS BETWEEN THE DEFENDANT AND HIS THREE CO-DEFENDANTS:

The Defendant had three co-defendants in the conspiracy.  The Court determined that the Defendant had no greater leadership role or managerial role than the other three co-defendants.    Joseph  Lynn  Thornburgh,  Federal  Register  Number  10471-062,  was released on May 2, 2017.  Robert W. Searles, Federal Register Number 10477-062, was released on February 28, 2014.  The third co-defendant, Wayne Leslie Davidson, remained a fugitive and never was brought to justice.  One of the purposes of 18 U.S.C. §3582(c)(1)(A)  is  to  resolve  sentencing  disparities  between  co-defendants  through Reduction-In-Sentence.  Granting the Defendant's Motion would resolve this disparity in the interest of justice.

The Defendant has two children.  He is living with his eldest daughter Arielle and her husband Kyle.  The Defendant's younger daughter, Elysia, and her husband Kalen, live in  Nashville,  Tennessee.    While  on  Home  Confinement,  the  Defendant  is  unable  to travel to visit his younger daughter.  By Granting the Defendant's Motion, he would be able to do so.

The Defendant's mother is buried in Fort Lauderdale, Florida.  The Court may recall that the Defendant's mother, Rose Fishman, attended every day of his trial.  The Defendant cannot  visit  his  mother's  gravesite  while  on  Home  Confinement.    By  Granting  the Defendant's Motion, he would be able to do so.

## V.    CONCLUSION:

The BOP has determined that the Defendant is not a danger to the community.  Had they believed otherwise, the BOP would never placed the Defendant on Home Confinement.    His Education Data Transcript shows that he successfully completed extensive programming prior to the pandemic, in order to better himself.   He also taught the Electronic Law Library Course at FCI Terminal Island to other inmates for 10 years. The Defendant has been and is complying with every rule of accountability for Home Confinement since leaving prison.

If this Motion is Granted, the Defendant will make his best efforts to work with his U.S. Probation Officer to increase his restitution payments and honor the Court's Order in that regard with a greater commitment to the victims of the conspiracy, by finding part-time work, or by working from home.   For instance, the Defendant has been already offered work by a long-time acquaintance, Randall Uselman, who is the President of a 501(c)(3) charitable corporation in Farmington, New Mexico, involved in environmental projects to save the environment.   The work may involve travel, which the Defendant cannot do while under Home Confinement, but can do with permission of his Probation Officer.   Granting the Defendant's Motion will make this work available to him, and thus he can contribute further toward his restitution, and also do some good in the world with the remaining years he has left.

## VI.    RELIEF REQUESTED:

For all of the issues and reasons set forth hereinabove, Defendant Steven Fishman most respectfully asks the Court to Grant a Reduction-In-Sentence under the provisions of 18 U.S.C. §3582(c)(1)(A) for Compassionate Release, under either or both "other inmate with medical conditions" and/or "other elderly inmates."  While the former is based on medical conditions and the latter is based on age and length of sentence served, the Defendant asks the Court to consider his eligibility under both provisions of the statute, as well as all of the evidence of the diligent fulfillment of his administrative exhaustion and his cooperation found in the exhibits attached.

Respectfully submitted to the Court on this 22nd day of September, 2020:

By:    _____

Steven Fishman
Defendant.

**STEVEN FISHMAN**
56971 Panchita Road
Yucca Valley, California 92284-2233
September 12, 2020

Clerk of the Court
United States District Court
Northern District of Oklahoma
333 West 4th Street
Tulsa, Oklahoma 74103

   RE:   <u>UNITED STATES v. FISHMAN</u>
          CASE NUMBER: 07-CR-0195-004-CVE

Dear Clerk of the Court:

Enclosed please find a **NOTICE OF CHANGE OF ADDRESS** and a **RENEWED MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. §3582(c)(1)(A), PETITIONING THE COURT TO CHANGE HOME CONFINEMENT STATUS TO REDUCTION IN SENTENCE; DECLARATION OF STEVEN FISHMAN,** in the above captioned case.  Please file the above documents and stamp the cover sheets when filed; and kindly mail back the extra cover sheets of the Notice and the Motion showing the date filed and stamped.  I have enclosed a self-addressed, stamped envelope for your convenience.

I greatly appreciate your assistance.

Respectfully,

Steven Fishman

Steven Fishman
36971 Panchita Road
Yucca Valley, California 92284-2233

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
**CERTIFIED MAIL**

7018 0680 0002 1579 3191


**PRIORITY MAIL ★**
**UNITED STATES POSTAL SERVICE®**
For Domestic and International Use
**TRACKED ★ INSURED**
Label 107R, May 2014

07-CR-195-CVE

**RECEIVED**
SEP 2 4 2020
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

Clerk of the Court
United States District Court
Northern District of Oklahoma
333 West 4th Street
Tulsa, Oklahoma 74103

Postmarked 9/22/20 -JS



1006

74103


U.S. POSTAGE PAID
PM 2-DAY
YUCCA VALLEY, CA
92284
SEP 22, 20
AMOUNT
**$18.15**
R2305M147825-11